***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission modifies the Opinion and Award of Deputy Commissioner Harris.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the parties and the subject matter of these two workers' compensation claims. *Page 2 
2. An employer-employee relationship existed between plaintiff and defendant on April 16, 1999 and August 8, 2001, the two dates of injury made the basis of these claims.
3. Defendant has filed a Form 21 and Form 26 admitting the compensability of plaintiff's April 16, 1999 injury and paid compensation for various periods through May 3, 2001, when plaintiff returned to work.
4. Plaintiff's average weekly wage for the April 16, 1999 injury was $317.31, which produces a compensation rate of $211.55.
5. Defendant has filed a Form 60 admitting the compensability of plaintiff's August 8, 2001 injury and continues to pay temporary total disability benefits.
6. Plaintiff's average weekly wage for the August 8, 2001 injury is $411.31, which produces a compensation rate of $274.11.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms and filings in I.C. No. 167451
 • Exhibit 3: Plaintiff's medical records in I.C. No. 167451
 • Exhibit 4: Vocational rehabilitation reports in I.C. No. 167451
 • Exhibit 5: Industrial Commission Forms and filings in I.C. No. 930543
 • Exhibit 6: Plaintiff's medical records in I.C. No. 930543
 • Exhibit 7: Vocational rehabilitation reports in I.C. No. 930543
 • Exhibit 8: Surveillance video of Plaintiff
The following document was accepted into evidence as a defendant's exhibit: *Page 3 
 • Exhibit 1: Surveillance reports
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the evidentiary hearing, plaintiff was 44 years old and dropped out of high school in the 11th grade. He received his GED many years later. He has lived all his life in Statesville, North Carolina. Before starting with defendant in 1998, plaintiff had worked at his stepfather's appliance store, doing sales, repairs, delivery and installation. He had also worked as an order-filler at Lowe's Distribution Center, which involved taking orders from stores, selecting products from the warehouse, and loading trucks. He had also worked as a grocery clerk and as a stock clerk. Plaintiff has a commercial driver's license. He is also certified as a Level II firefighter and as a medical responder.
2. Plaintiff began working with defendant as a worker on a road patch crew. On April 16, 1999, plaintiff was working a jackhammer when the bit got stuck in concrete and plaintiff felt a pop in his back as he tried to pull it out. Plaintiff sustained a herniated disk at L5-S1.
3. By filing a Form 21, defendant accepted plaintiff's April 16, 1999 injury as a "lumbar strain" and has paid for the medical treatment related thereto.
4. Plaintiff underwent an epidural steroid injection for his back pain on May 13, 1999. Following the injection, he began to have pain in his lower right leg, which got progressively worse until plaintiff was admitted to the hospital on May 18, 1999 with swelling and extreme tenderness in his right calf. Plaintiff was diagnosed with deep venous thrombosis *Page 4 
(hereinafter "DVT) in his right lower extremity and was put on a regimen of daily Coumadin doses to combat the condition. Plaintiff was released from the hospital on May 25, 1999 and remained on daily Coumadin doses until November of 1999.
5. On June 2, 1999, Dr. Robert I. Saltzman noted that plaintiff had developed the blood clot in his right calf following the epidural block but he did not indicate whether the epidural block caused the DVT.
6. Following more conservative treatment efforts, plaintiff underwent a lumbar laminectomy on November 1, 2000 with Dr. William O. Bell.
7. A January 18, 2001 functional capacity evaluation indicated that plaintiff could then work at a light duty level and would probably be able to progress to heavier duties in the future.
8. Plaintiff returned to work with defendant on May 3, 2001 as a mowing supervisor. His primary duty was to inspect the work of the mowing crews, and, in doing so, he would drive a DOT pickup truck about 150-200 miles per day to look at the mowed areas and pick up trash, tires and other things along the roadway.
9. On August 8, 2001, plaintiff was using a bush axe to clear brush on the side of the road when he stepped in a hole and re-injured his back.
10. By filing a Form 60, defendant accepted plaintiff's August 8, 2001 injury as "back injuries" and has paid for the medical treatment related thereto.
11. Following conservative treatment efforts, plaintiff underwent a spinal decompression, fixation and fusion with Ray cage at L5-S1 on July 10, 2002 with Dr. Bell.
12. On August 1, 2002, plaintiff was admitted to the hospital with DVT in his right thigh. The next day, Dr. Fred Marks noted that plaintiff had been "fairly inactive since (his July *Page 5 
10, 2002 surgery), which may have contributed to the current illness." Plaintiff was re-started on Coumadin, and he was released from the hospital on August 9, 2002.
13. On September 3, 2002, Dr. Bell noted that plaintiff "had a postoperative deep venous thrombosis two weeks after his discharge from the hospital (following the July 10, 2002 surgery)." Dr. Bell did not, however, comment on whether the surgery caused the DVT.
14. Plaintiff was hospitalized with DVT in his right leg again on October 31, 2002.
15. Plaintiff underwent a functional capacity evaluation on June 10, 2003. On July 15, 2003, Dr. Bell wrote that plaintiff's work restrictions, per the FCE, were occasional lifting of a maximum of 30 pounds, frequent lifting of a maximum of 20 pounds, and constant lifting of a maximum of ten pounds. The FCE also noted that plaintiff could perform work at the light-medium physical demand level, with only occasional kneeling, stair climbing, crawling, sitting, standing and walking and only infrequent bending and squatting. The evaluator noted that plaintiff gave good effort in the FCE, with no apparent symptom magnification, and that the FCE was a valid measure of plaintiff's capacities.
16. On October 9, 2003, Dr. Bell released plaintiff from treatment for his low back condition at maximum medical improvement for said condition. Dr. Bell assigned a 20% permanent partial impairment rating for plaintiff's back.
17. Plaintiff was hospitalized with DVT in his right leg again on October 22, 2004. During this hospitalization, Dr. Marks implanted a Greenfield filter to help prevent any further blood clots from traveling in plaintiff's circulatory system.
18. On August 22, 2005, Dr. Marks wrote that plaintiff remains on daily Coumadin doses to prevent further DVT episodes and is expected to remain on Coumadin for the rest of his *Page 6 
life. Dr. Marks also wrote that, because of the Coumadin regimen, plaintiff is unable to perform activities that may cause injury to him.
19. Plaintiff has participated in extensive vocational rehabilitation over the course of his two claims. In his various stretches of vocational rehabilitation, plaintiff has pursued over 400 job leads in total.
20. Rehabilitation professional David A. Steinbeck started providing vocational rehabilitation services to plaintiff on or about December 16, 2003. Over the following two-plus years, plaintiff dutifully met with Steinbeck, gave good effort in following up on the job leads that Steinbeck identified and also conducted his own good faith job search during the entire period.
21. Steinbeck's February 17, 2006 report stated that, of the 268 job leads that he had identified since he started on the case, plaintiff had followed up on 256 of them. Steinbeck's reports show that plaintiff also consistently sought out and contacted five or more potential employers per week on his own.
22. Defendant put vocational rehabilitation on hold on February 17, 2006 and closed the vocational rehabilitation file on September 18, 2006.
23. Plaintiff has expressed his desire to become a firefighter. Plaintiff is involved with his local volunteer fire department and has been to the scene of several fires. He even passed one agility test required of applicants for a professional firefighter position. This test required plaintiff to carry a 50-pound vest and a 50-foot section of hose up a ladder. However, even though plaintiff was able to perform these actions one time, there is no evidence showing that a position as a professional firefighter is within plaintiff's job restrictions as set out in the June 20, 2003 FCE. *Page 7 
24. Defendant produced surveillance footage that showed plaintiff dropping his child off at daycare, eating breakfast with firemen at a local restaurant, and going to his stepfather's appliance store. Plaintiff has helped his stepfather with his used appliance business for years, since childhood. Plaintiff knows how to service and repair all kinds of appliances. The surveillance shows that plaintiff can move appliances on hand trucks and repair them. The investigator also stated that he went into the store and witnessed plaintiff talking on the phone to a customer; however, when the investigator asked plaintiff about buying an appliance, plaintiff stated that he would have to talk with his stepfather about it. Plaintiff helps out his stepfather three or four days a week and is not paid for anything he does, nor has he been since sustaining his August 8, 2001 injury. Plaintiff's stepfather is in his late 70s and is barely keeping his store afloat.
25. While plaintiff has engaged in periodic activity with his stepfather's used appliance business, there is no evidence showing that a position as a full-time appliance repairman is within plaintiff's jobs restrictions.
26. If plaintiff over-exerts, he finds that he ends up with increased leg pain and must resort to lying in bed or a recliner for an extended period to try to recover.
27. Plaintiff admitted that if his old mowing supervisor position were offered back to him, he could probably do it. However, defendant states that it has now contracted this position out and cannot offer it to plaintiff. Plaintiff has not made contact with the contractor now performing these responsibilities to ascertain whether a job would be available for him.
28. In August of 2005, plaintiff was given a job lead for a DMV clerk position with defendant. Plaintiff had already checked into this position himself and he knew that it required a one-time training session of four-to-six weeks in which he would have to stay in Salemburg, *Page 8 
North Carolina. Not wanting to be away from home that long, plaintiff declined to pursue the job lead. Plaintiff's refusal to consider the position due to a one-time training session that would require plaintiff to be out of town for four to six weeks is some evidence of non-compliance with vocational rehabilitation.
29. Plaintiff also expressed concern during the vocational rehabilitation process about going outside State government to find a job, because he does not want to lose his coverage with the State Health Plan.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries by accident while in the course and scope of his employment with defendant on April 16, 1999 and August 8, 2001. N.C. Gen. Stat. § 97-2(6). Defendant accepted plaintiff's April 16, 1999 injury on a Form 21, creating a presumption of disability regarding that injury. However, plaintiff returned to work following this injury and any presumption of disability arising from the Form 21 ended with the return to work. Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72, 476 S.E.2d 434 (1996). Defendant accepted plaintiff's August 8, 2001 injury on a Form 60 and thus, plaintiff is not entitled to a presumption of continuing disability with regard to the August 8, 2001 injury by accident. Johnson v. Southern Tire Sales Serv., 358 N.C. 701,599 S.E.2d 508 (2004).
2. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. *Page 9 Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
3. Although plaintiff appears to be capable of some work, he has, after a reasonable effort on his part, been unsuccessful in finding suitable employment. Russell v. Lowe's Product Distribution, supra. Plaintiff's pursuits with the volunteer fire department and assisting his elderly step-father in the appliance store are not sufficient evidence to show that plaintiff could handle full-time, gainful employment in those pursuits. Defendants have failed to produce sufficient evidence that plaintiff is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
4. Plaintiff has not shown that he is permanently and totally disabled. Kennedy v. Duke Univ. Med. Ctr., 101 N.C. App. 24, 33,398 S.E.2d 677, 682 (1990), N.C. Gen. Stat. § 97-29. *Page 10 
5. Plaintiff has not substantially complied with vocational rehabilitation in that he unjustifiably refused to pursue a job with the DMV due to a one-time, out-of-town training session and he has failed to seriously consider employment outside the State of North Carolina. Defendants have not previously requested nor has plaintiff previously been ordered by the Industrial Commission to comply with vocational rehabilitation. N.C. Gen. Stat. § 97-32.
6. Plaintiff has not carried his burden to show that his DVT episodes have been related to his compensable injuries, nor has he shown that his need for ongoing treatment for DVT is so related. The medical records do not establish causation. Even if the DVT episode in August of 2002 was related to his surgery in July of 2002, which plaintiff has not shown to be more likely than not the case, he has not shown that his general DVT problem and his need for ongoing treatment for it is related to his compensable injuries. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
7. Defendant has not defended these claims without reasonable grounds. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue to pay plaintiff temporary total disability compensation in the amount of $274.11 per week.
2. Plaintiff's claim of permanent and total disability is denied.
3. Plaintiff's claim for attorney's fees under N.C. Gen. Stat. § 97-88.1 is denied.
 4. Plaintiff's claim for compensation for his DVT is denied. *Page 11 
5. Defendants shall pay the costs.
 ORDER
IT IS HEREBY ORDERED that defendants shall re-instate vocational rehabilitation and IT IS HEREBY ORDERED that plaintiff shall comply with all reasonable and prescribed medical and rehabilitative treatment as provided by defendants, including vocational rehabilitation. N.C. Gen. Stat. § 97-25. Refusal to comply with this Order shall bar plaintiff from further compensation until such refusal ceases unless, in the opinion of the Industrial Commission, the circumstances justified the refusal.
This the 17th day of July, 2008.
S/____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING: S/____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1